HALL, Judge.
Plaintiff brought this action in quanti minoris under the provisions of LSA-C.C. *401 Art. 2541 et seq. and for damages, including attorney’s fees, under the provisions of LSA-C.C. Arts. 2547 and 1934(2). Following trial on the merits judgment was rendered in defendant’s favor dismissing plaintiff’s suit at his cost. Plaintiff appealed.
Plaintiff alleged that during negotiations leading up to his purchase of a home from defendant he was assured by defendant that the fireplace located in the largest room in the house was a working, functional fireplace and that he relied upon such representations; that after purchasing the home he had trouble with the fireplace “in that the fireplace, if burning anything other than kindling wood, would smoke up the entire housethat if he had been informed of the true state of the fireplace he would not have bought the house and certainly not at a price of $44,000.00; that to remedy the defects in the fireplace it will be necessary to tear it down and completely rebuild it at a cost of $1,500.00 and that he is entitled to a $1,500.00 reduction in the purchase price. Plaintiff further alleged that the defective condition of the fireplace was known to defendant prior to the sale and “because of defendant’s fraud” he is entitled to damages, including attorney’s fees, in the sum of $1,400.00.
The record reveals that in May of 1964 plaintiff and his wife became interested in buying a lot and building a home in a certain area in Metairie and that one day while driving about the area they encountered a real estate agent, a Mrs. Buceóla, and outlined to her the type of home they wished to build. Mrs. Buceóla told them that she had a house just like the one they described to her and invited them to inspect it.
They followed Mrs. Buccola’s car to 3027 Metairie Court and entered the house and were there introduced to defendant and his wife who together with Mrs. Buceóla took them through the house and pointed out its features. When they saw the fireplace they fell in love with it. Plaintiff and his wife both testified that they saw the fireplace had been used and asked if it worked properly and someone said “yes”. Plaintiff testified that he was told by someone “that the fireplace did work and as a matter of fact Mrs. Buceóla made the statement in the presence (sic) that she only wished my wife and I invited her and her husband back because they enjoyed the fireplace so much.”
Plaintiff bought the house from the defendant on September 3, 1964. The first time he had occasion to use the fireplace was in November. Plaintiff testified “that we threw some logs in there and it didn’t work. The fire wouldn’t come up and it was smoking * * *. You could see the smoke coming up in the house instead of going up the chimney. It was going out, to the tune where it bum (sic) our eyes.”
Plaintiff stated that he wanted a fireplace in his home and if he had known about the condition of the fireplace he would not have purchased the house.
When asked by his attorney if the fireplace in its present condition was of use to him he answered:
“A. Yes, without a question I will make that flat statement. We get the benefits of a fireplace, it is not working properly but because the only way I could get it to work is I take kindling and I chop it in small pieces and I keep building it up and I cannot walk off and let this then smoulder down because it does not get oxygen. I have used this fireplace. This is the third winter we have used the fireplace. I am accummulating logs way ahead of time and I leave them lay six to eight months on a lot on the back and on the side of us. I cannot throw logs on it, I have to throw chopped up.”
A masonry contractor and a civil engineer called by plaintiff testified that the fireplace was too shallow, the chimney not tall enough, and was otherwise improperly constructed. The civil engineer said how *402 ever that although it could not burn logs, it was capable of burning kindling wood and fat pine.
Defendant testified that he is a contractor and built the house himself as a home for his family; that the fireplace however was built for him by a brick mason and was built more as a decoration than anything else; that the house had a central heating system with outlets in every room and that the kitchen was furnished with an electric stove. He further testified that he had lived in the house several years and that he burned two by fours and other scrap lumber in the fireplace and that it suited his purposes well. He said that on one occasion he had found an oak log while hunting rabbits and brought it home with the intention of using it in the fireplace but it would not burn at all. He further testified that he could not have told plaintiff that logs could be burned in the fireplace because he never did do it.
There is no testimony in the record that either plaintiff or his wife prior to their purchase ever asked anyone if the fireplace would burn logs and no testimony that they were ever told by anyone whether it would or would not burn logs. The question of logs was never mentioned. .All that plaintiff was told was that the fireplace worked, and the record shows that it functions well if only small fast burning wood is used.
When plaintiff was asked on cross examination whether defendant had told him that the fireplace would accommodate burning logs, his answer was:
“A. No, I would not make that flat statement. I don’t say that he would say the fireplace would accommodate burning logs. But I think a fireplace should burn logs, every fireplace.”
Plaintiff’s wife testified that when they first saw the fireplace they fell in love with it; that the house was perfectly satisfactory in all respects except that the fireplace did not live up to their expectations.
Plaintiff makes much of the fact that defendant had in May of 1964 placed a For Sale advertisement in the Times-Picayune describing the house as containing an “open hearth fireplace.” However there is no testimony in the record showing that either plaintiff or his wife ever saw this advertisement prior to signing the contract of sale.
Plaintiff also makes a point of the fact that defendant failed to call his wife as a witness and also failed to call, as witnesses, Mrs. Buceóla, the real estate agent, and Raymond Folks, the mason who built the fireplace. We find no reason why defendant should have called them.
We are of the opinion that the Trial Judge correctly stated and resolved the issues in this case in his written “Reasons for Judgment” and we adopt as our own opinion herein the following excerpt taken therefrom:
“The sole complaint of plaintiff is based on the failure of the fireplace in the house to burn logs or heavy wood. It is admitted by the parties that the fireplace will burn small wood and fast burning wood of a high-heat-generating nature.
“The issue resolves itself to this: Is the plaintiff entitled to a reduction of the purchase price of the house because of the failure of the fireplace to function as he assumed it would?
“The evidence and testimony of the witnesses convinces the Court that there is no basis for recovery by plaintiff. What plaintiff really seeks is a reimbursement for the cost of converting a small wood burning fireplace into one which will burn heavy wood. The present fireplace functions adequately for the purpose for which it apparently was constructed. While a difference of opinion exists as to the design and construction of the fireplace at issue, according to plaintiff’s witnesses, there is no dis *403 agreement that the fireplace functions for its limited purposes.
“Apparently, plaintiff assumed that the fireplace would burn heavy logs and when this assumption proved incorrect, he was dissatisfied with its limited performance.
“ * * * There is no evidence or testimony that defendant Cerise concealed any alleged vice in the fireplace, or even discussed its capability or potential. * * »
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by plaintiff-appellant.
Affirmed.